Kathryn N. Nester (#13967)
Wendy M. Lewis (#5993)
NESTER LEWIS PLLC
50 W. Broadway, Ste. 300
Salt Lake City, UT   84101
(801) 535-4375
kathy@nesterlewis.com
wendy@nesterlewis.com
ATTORNEYS FOR THOMAS F. DAUGHERTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | | |
|---|---|---|
| THOMAS F. DAUGHERTY, | § § § | |
| Plaintiff, | § § | **FIRST AMENDED COMPLAINT** |
| v. | § § | **AND** **JURY DEMAND** |
| COTTONWOOD HEIGHTS, a City; and JOHN DOES 1-10, | § § § | Case No. 2:23-cv-00556-DBP |
| Defendants | § | |

Plaintiff Thomas F. Daugherty, as against Defendants the City of Cottonwood Heights, and John Does 1-10 alleges as follows:

## INTRODUCTION

Thomas F. Daugherty was employed as a police officer for the City of Cottonwood Heights from August 1, 2008, until on or about July 29, 2024. In July of 2022, Sergeant Daugherty was passed over for a promotion to the position of Master Sergeant despite having more seniority and superior qualifications to the individual chosen. At the time Sergeant Daugherty was passed over for the promotion he was

1

53 years old and had disabilities. An individual younger than Sergeant Daugherty was awarded the position without opening the position to interested applicants. On August 8, 2022, Daugherty filed a grievance with the City of Cottonwood Heights and suffered subsequent retaliation. On October 25, 2022, Mr. Daugherty filed a charge of discrimination with the Anti-Discrimination and Labor Division of the Utah Department of Labor. ("UALD") An amended charge was filed on March 10, 2023. On June 15, 2023 a notice of right to sue letter was issued. On August 23, 2023, Mr. Daugherty filed the original Complaint in this matter. After filing the charge and lawsuit, Mr. Daugherty was subjected to repeated investigations and disciplinary actions, despite having an outstanding record during his previous twenty-one years of law enforcement service. On May 13, 2024, Mr. Daugherty was suspended. On May 30, 2024, Mr. Daugherty was reprimanded for evaluations of his subordinates, which his supervisor deemed to be unsatisfactory. On July 5, 2024, Mr. Daugherty was asked in a questionnaire propounded to him by his employers if he had ever experienced discrimination on the job and he answered "yes." Two weeks later, another baseless investigation of Mr. Daugherty was initiated and on or about July 29, 2024, Mr. Daugherty was terminated. Again, Mr. Daugherty filed a claim with the UALD alleging that his treatment after filing his first charge and his federal lawsuit constituted unlawful retaliation. On September 26, 2024, a formal charge was instituted by the UALD. A notice of right to sue was issued on December 2, 2024. This suit is brought under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA") and the Americans with

2

Disabilities Act ("ADA") and plaintiff is seeking economic damages, compensatory damages, interest, punitive damages, attorneys' fees and costs and all other awardable damages and equitable relief.

## PARTIES

1. Thomas F. Daugherty ("Daugherty") is a 54-year-old resident of Salt Lake County, Utah. At all relevant times, Daugherty was employed as a Sergeant by the Cottonwood Heights Police Department ("CHPD").

2. Defendant City of Cottonwood Heights ("City") is a political subdivision of the State of Utah and a body corporate and politic. The City is responsible for implementing and enforcing policies, customs and practices relating to hiring, promotion and discipline of city employees.

3. John Does 1-10 are those other officers, officials, and employees of the City who participated in the events set forth in the Complaint and acted in violation of Daugherty's civil rights.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. §1343(a)(3) and 28 U.S.C. §1331 to secure the protection of and redress deprivations of rights secured by 42 U.S.C. §12111, *et. seq.*, 29 U.S.C. §621, *et seq.,* and 42 U.S.C. §2000e, *et seq*.

5. Supplemental jurisdiction of the state claims alleged pursuant to the Utah Protection of Public Employees Act, Utah Code Ann. §67-21-3, is proper under 18 U.S.C. §1367.

6. Venue is proper under 28 U.S.C. §1391(b)(1)and (b)(2).

## ADMINISTRATIVE PROCEEDINGS

7. On or about October 25, 2022, Daugherty filed a Charge of Discrimination with the UALD and the EEOC alleging discrimination based on disability and unlawful retaliation. The Charge was amended to include a claim of discrimination based on age.

8. On June 15, 2023, Sergeant Daugherty received a Notice of Right to Sue letter from the Civil Rights Division of the Department of Justice based on his Charge.

9. On or about September 26, 2024, Mr. Daugherty filed a new charge with the UALD alleging unlawful retaliation occurring after the filing of the original Complaint in this matter.

10. On December 2, 2024, a Notice of Right to Sue letter was issued by Civil Rights Division of the Department of Justice.

## FACTUAL ALLEGATIONS

11. CHPD hired Daugherty as a police officer on August 1, 2008. He remained employed full-time there until he was terminated on or about July 29, 2024.

12. Daugherty is currently 55 years old. At all times relevant to this complaint, CHPD and the City were aware of Daugherty's age.

13. In 2021, Daugherty received a sixty (60) percent disability rating from injuries received in the military twenty years prior. Daugherty advised management of the disability but needed no accommodations.

14. Prior to the events described in this Complaint, Daugherty received outstanding reviews of his work performance. Daugherty had no significant disciplinary history. Daugherty was promoted to Sergeant in 2015.

15. Daugherty served as a sniper on the SWAT team continuously from 2008 through August of 2022. Daugherty was serving as the Team Leader in the SWAT unit in 2022. Daugherty attended the SWAT commander school in 2021 at the request of CHPD management.

16. In January 2022, Assistant Chief Brenneman advised Daugherty he should start enrolling in leadership classes because it was anticipated he would be receiving a leadership position during an upcoming restructuring of the department. Daugherty complied and attended the FBI-LEEDA Command Leadership Institute in Colorado in July of 2022.

17. On July 26, 2022, CHPD conducted their regular bids for patrol shifts. Daugherty bid for and was awarded the Monday through Friday 2:00 pm to midnight shift, which was a desirable shift based on Daugherty's child care requirements.

18. On July 27, 2022, Daugherty learned that another member of the Department, who was 43 years old, had been promoted to be the commander of SWAT.

19. On July 28, 2022, CHPD announced the same individual who had been promoted to the commander of the SWAT team was being promoted to Master Sergeant. Prior to this announcement, CHPD had not advertised the position or invited the submission of any applications. At that time, CHPD internal policies required inviting applications for available positions via internal job announcements.

20. The individual who was promoted to SWAT commander and Master Sergeant had less seniority, less experience, and less training than Daugherty and was over ten years younger.

21. Chief Russo was overheard making comments that Daugherty "would not be around much longer" and that the individual promoted would have "more time" at the department.

22. A culture of age discrimination permeated the CHPD, and had resulted in other grievances being made about ageist remarks directed toward older officers. No remedial measures were taken and an individual who called one of the sergeants a "geriatric f____" received a promotion and no discipline.

23. The decision to promote another individual to the position of Master Sergeant over Daugherty negatively impacted Daugherty's seniority and caused him to lose out on a pay raise and increased benefits.

24. On August 2, 2022, CHPD required all officers to rebid for their shifts. Daugherty was denied his bid and was re-assigned to the Friday through Monday, 5:30 a.m. to 7:00 p.m. shift. This was a much less desirable shift that significantly interfered with his child care responsibilities.

25. On August 8, 2022, Daugherty filed a grievance about his inability to apply for the promotion to Master Sergeant. The grievance was filed with the HR department and Daugherty requested it be handled by the City Manager, Tingey. No action was taken as a result of the grievance.

26. After the filing of his grievance, Daugherty was no longer included in management correspondence, important meetings or decision making, despite his management role within CHPD. Where he had previously had supervisory decision-making authority about the team that he supervised, he no longer was allowed to make critical staffing and scheduling decisions for his own team.

27. On August 15, 2022, Tingey and Russo held a closed door meeting late in the afternoon. Shortly thereafter, on the same day, a new policy was posted eliminating the right to apply for the position of Master Sergeant.

28. On September 5, 2022, Daugherty filed a complaint with the UALD and the EEOC.

29. On October 10, 2022, Daugherty applied to attend continuing education classes on leadership in 2023. His request was denied. Thereafter, he was required to attend trainings on his personal leave days and pay for his courses himself.

30. In January of 2023, Tingey requested a copy of Daugherty's disciplinary file. The only item in his file was a verbal warning dated on or near 2018 for failure to activate his body camera.

31. After Tingey reviewed a copy of Daugherty's personnel file, Chief Russo filed a complaint against Daugherty instigating an investigation for failure to activate his body camera when stopping speeding vehicles in a neighborhood on January 27, 2023.

32. On February 3, 2023, Daugherty received a written warning in his personnel file for failing to activate his body camera while pulling over speeding vehicles. The

disciplinary investigation report was inaccurate and failed to report factual information provided by Daugherty during his interview.

33. On March 21, 2023, Daugherty was placed on administrative leave and required to undergo an evaluation for fitness for duty. On the same day he was advised there was an internal investigation ongoing against him. After a medical examination, he was cleared to return to work on April 7.

34. On June 15, 2023, Daugherty received his Notice of Right to Sue letter from the Department of Justice.

35. On August 23, 2023, Mr. Daugherty filed the original Complaint in this matter.

36. Following the filing of the federal lawsuit, Mr. Daugherty experienced repeated retaliation in the form of baseless investigations, disciplinary actions against him, suspensions, and then his ultimate termination on or about July 29, 2024.

37. Daugherty's disciplinary warnings, his change to a less desirable shift, his loss of seniority, his denial of training opportunities, his forced leave and removal from active involvement in management, his repeated investigations and his ultimate termination were all retaliatory following his filing of a grievance, a formal complaint with the UALD and EEOC and a federal lawsuit. The individuals involved in this retaliation were Russo, Brenneman, and Tingey.

38. The above-described actions of the City, Russo, Brenneman and Tingey have caused Daugherty to suffer emotional distress, loss of salary, loss of benefits and permanent damage to his professional reputation.

## FIRST CLAIM FOR RELIEF

### (Hostile Work Environment in Violation of Title VII and ADEA)

39. Plaintiff incorporates all of the preceding allegations as if fully set forth herein.

40. Daugherty is a male over 40 years old.

41. The actions of Russo, Brenneman and Tingey toward Daugherty, and towards other older employees at CHPD, were sufficiently severe and/or pervasive to create a discriminatory hostile work environment replete with ageist remarks and promotions of younger, less-qualified individuals above older employees.

42. Daugherty reported this harassment, but the defendants failed to fully investigate or take remedial measures to prevent this on-going unlawful harassment within the workplace. The defendants thereby condoned and fostered the creation of the hostile environment.

43. Daugherty has been damaged as a result of the defendants' failure to promptly remedy the known harassment. He is entitled to recover all resulting damages including lost pay and benefits, future lost pay and benefits, and emotional distress damages.

44. Daugherty is also entitled to all reasonable attorneys' fees and costs incurred in bringing this action.

45. The Defendants' unlawful conduct toward Daugherty in violation of ADEA and Title VII was done with reckless disregard for his federally protected rights, and as such, Daugherty is entitled to recover liquidated damages and/or punitive damages as well.

## SECOND CLAIM FOR RELIEF

**(Discrimination in Violation of Title VII and ADEA)**

46. Daugherty incorporates the allegations contained in the paragraphs above as if fully set forth herein.

47. Daugherty is a man over 40 years old.

48. The Defendants subjected Daugherty to adverse employment actions including but not limited to: denial of promotions and the corresponding benefits, refusing to allow training, denial of desirable shifts, unfair discipline, forced administrative leave, removal of important supervisory responsibilities and termination.

49. These adverse employment actions materially affected his employment.

50. The decision to subject Daugherty to one or more of these adverse actions was because of his age and/or disabilities.

51. Daugherty has been damaged as a result of the defendants' discriminatory conduct. He is entitled to recover all resulting damages including lost pay and benefits, future lost pay and benefits, damage to his professional reputation and emotional distress damages.

52. Daugherty is also entitled to all reasonable attorneys' fees and costs incurred in bringing this action.

53. The Defendants' unlawful conduct toward Daugherty in violation of ADEA and Title VII was done with reckless disregard for his federally protected rights, and as such, Daugherty is entitled to recover liquidated damages and/or punitive damages as well.

## THIRD CLAIM FOR RELIEF

### (Retaliation in Violation of Title VII and ADEA)

54. Daugherty incorporates the allegations contained in the paragraphs above as if fully set forth herein.

55. Daugherty reported violations of Title VII and the ADEA to the defendants in good faith.

56. The Defendants did not conduct an adequate investigation into his complaints and instead took multiple adverse employment actions against Daugherty as a result of his reports. These included but are not limited to: denial of promotions and the corresponding benefits, refusing to allow training, denial of desirable shifts, unfair discipline, forced administrative leave, removal of important supervisory responsibilities and termination.

57. Defendants' retaliation against Daugherty is causally linked to his protected activity.

58. Daugherty has been damaged as a result of the defendants' retaliatory conduct. He is entitled to recover all resulting damages including lost pay and benefits, future lost pay and benefits, and emotional distress damages.

59. Daugherty is also entitled to all reasonable attorneys' fees and costs incurred in bringing this action.

60. The Defendants' unlawful conduct toward Daugherty in violation of ADEA and Title VII was done with reckless disregard for his federally protected rights, and as such, Daugherty is entitled to recover liquidated damages and/or punitive damages as well.

## FOURTH CLAIM FOR RELIEF

**(Denial of a Promotion in violation of the ADA)**

61. Daugherty incorporates the allegations contained in the paragraphs above as if fully set forth herein.

62. At all times relevant hereto, Daugherty was disabled within the meaning of 42 U.S.C. § 12102(1)(A) of the ADA as he had suffered, among other injuries, injuries to his shoulder, damage to his hearing and a traumatic brain injury which substantially limited, for an extended period-of-time, one or more major life functions including lifting, and the ability to hear and think.

63. In the alternative, Daugherty either had a record of being impaired, or was regarded by the defendants as being disabled, and was therefore disabled under 42 U.S.C. § 12102(1)(A) & (1)(C) of the ADA.

64. The defendants were fully aware of Daugherty's disability, as he had advised management directly and the defendants had required him to undergo specific testing relating to his disability in order to determine whether he was eligible to participate in the SWAT team.

65. The Defendants discriminated against Daugherty by denying him a promotion to Master Sergeant because he was disabled, in violation of 42 U.S.C. §12112(a), which prohibits an employer from doing so.

66. Daugherty has been damaged as a result of the defendants' discriminatory conduct. He is entitled to recover all resulting damages including lost pay and benefits and prejudgment interest on those amounts, future lost pay and benefits, and emotional distress damages.

67. Daugherty is also entitled to all reasonable attorneys' fees and costs incurred in bringing this action.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues triable as of right.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays for judgment as follows:

1. Back pay in an amount to be proven at trial;
2. Future lost wages and benefits;
3. Compensatory and consequential damages;

4. Punitive damages;

5. Liquidated damages;

6. Pre-judgment and post-judgment interest at the highest lawful rate;

7. Attorney fees and costs of this action, including expert witness fees, as appropriate; and

8. For such other relief as justice allows.

DATED this the 17th day of January, 2025.

*/s/ Kathryn N. Nester*
Kathryn N. Nester
Wendy M Lewis
Attorneys for Thomas F. Daugherty