THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Thomas L. Daugherty,<br><br>    Plaintiff,<br>v.<br><br>Cottonwood Heights,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:23-cv-556 DBP<br><br><br>Magistrate Judge Dustin B. Pead |

This matter is before the Court on Defendant Cottonwood Heights's (the "City") Motion for Summary Judgment.[1] On May 11, 2026, the court held oral argument on the Motion.[2] Following oral argument, the court issued a Memorandum Decision and Order dismissing with prejudice Plaintiff's claims under Title VII and granting summary judgment in favor of the City on Plaintiff's Fourth Claim for Relief under the Americans with Disabilities Act ("ADA").[3] The Court requested that each party submit proposed Findings of Fact and Conclusions of Law addressing the remaining three claims for discrimination, harassment, and retaliation asserted under the Age Discrimination in Employment Act ("ADEA"). Having carefully reviewed the parties' briefs, the evidentiary record, the proposed findings, and hearing arguments from the parties, the court enters the following Memorandum Decision and Order granting in part and denying in part Defendant's Motion for Summary Judgment.

---

[1] Defendant's Motion for Summary Judgment, ECF No. 41. The parties have consented to the undersigned conducting all proceedings in this case pursuant to DUCivR 72-4, including the entry of final judgment. ECF No. 14.

[2] Plaintiff Thomas F. Daugherty was represented by Kathryn N. Nester and the City was represented by Mitch M. Longson.

[3] Memorandum Decision and Order, ECF No. 54.

**BACKGROUND AND UNDISPUTED MATERIAL FACTS**[4]

Plaintiff Thomas F. Daugherty (Daugherty) is a former employee of the Cottonwood Heights Police Department. He began working as a patrol officer in approximately August 2008. In 2015, Chief of Police Robby Russo promoted Daugherty to the rank of Sergeant. Daugherty remained a Patrol Sergeant until his termination in July 2024.

Daugherty served on a secondary, voluntary assignment of the Department's SWAT team from 2008 until his resignation from the team in July 2022. This secondary assignment provided no additional compensation, pay, or benefits. Prior to certain events set forth herein, Daugherty's personnel record reflected positive performance reviews, medals, and awards (including "Officer of the Year").

## I.    Timeline of events

In July 2022, then-SWAT commander Lieutenant Dan Barlett made Chief Russo aware that the SWAT team "was no longer viable [and] could not be deployed" given personnel issues within the team. Lieutenant Bartlett emailed Chief Russo advising that SWAT members Chris McHugh and JD Tazoi intended to resign from the team, adding: "can't speak for Thom [Daugherty]".

Given the issues with the SWAT team, Chief Russo decided to reorganize the team and select a new SWAT commander by promoting an existing sergeant to the position and to a Master Sergeant role. The Master Sergeant position would be selected by Russo. During the reorganization process, Chief Russo met with Sergeant Chris McHugh, whom Russo determined

---

[4] The facts are drawn from the parties' briefing, proposed findings, and attached exhibits. *See generally* Fed. R. Civ. P. 56(c). On motions for summary judgment, the court "must construe the facts in a way most favorable to the nonmovant." *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). The court examines "the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990).

was a viable candidate to fill the Master Sergeant role. On July 26, 2022, Chief Russo promoted Chris McHugh to Master Sergeant and SWAT Commander. McHugh was 43 years old; Daugherty was 53 years old and Chief Russo knew he was over the age of 50. The position was not advertised or posted, and no interviews were conducted prior to McHugh's selection. Chief Russo did not ask Daugherty if he intended to leave the SWAT team prior to making his selection of a new SWAT commander. Four days later, Daugherty resigned from the SWAT team. Daugherty's rank, base pay, and primary patrol duties did not change at that time.

On August 2, 2022, shortly after his SWAT resignation, Plaintiff bid on and received a shift that he alleges was less desirable because it interfered with his childcare responsibilities. Plaintiff's "reassignment" to a different shift was part of a "re-bid" by one side of the Department, in which one whole side of the Department selected new schedules. Plaintiff maintained his same seniority in the schedule bidding process but apparently the more conducive schedule was unavailable as part of the process.

On August 8, 2022, Daugherty filed an internal grievance challenging Chief Russo's decision to promote McHugh without posting the position. The grievance did not reference age, age discrimination, or the relative ages of Daugherty or McHugh. Plaintiff alleges in his Complaint that, after filing his grievance, he "was no longer included in management correspondence, important meetings or decision making, despite his management role," including his role of "mak[ing] critical staffing and scheduling decisions for his own team." Plaintiff also alleges his "supervisory duties" were removed because he believes he was left off Department training emails and no longer involved in trainings. Plaintiff never spoke with Department leadership about his concerns, and he continued to oversee patrol scheduling and staffing decisions after filing the grievance.

3

In October 2022, Daugherty applied for training courses but was "required to attend trainings on his personal leave days and pay for the courses himself." However, Plaintiff was never required to take personal leave to attend mandatory training. On October 25, 2022, the UALD filed a formal Charge of Discrimination and on November 5, 2022, the EEOC forwarded a letter to Daugherty advising that his charge would be forwarded to the City within ten days.

On March 10, 2023, Daugherty amended his Charge to add a claim of age discrimination under the ADEA. Plaintiff's age discrimination claim includes allegations about statements made by two different officers, one in the Department, and one not employed by the City, who each called another officer a "geriatric fuck." Daugherty was not present for the comments, and they were not in reference to Plaintiff. Following the incident, Chief Russo met with the offending Cottonwood Heights officer reminding him about the City's harassment policies and issued a verbal warning due to the inappropriate comment. Daughtery's age discrimination claim also references a public speech made by Chief Russo at a banquet where he stated members of the Department were "aging out" and the City was in the process of "picking new people."

Also in March 2023, during administrative disclosures, the City learned of Daugherty's military-related diagnoses of PTSD, Traumatic Brain Injury (TBI), and hearing loss. On March 21, 2023, Chief Russo placed Daugherty on paid administrative leave pending a fitness-for-duty evaluation. Following the evaluation, Daugherty was cleared without restriction and returned to his Sergeant position on April 7, 2023.

## II.    Disciplinary Timeline and Investigation

Daugherty received a written warning in February 2023 from Assistant Chief Paul Brenneman for failing to activate his body-worn camera during a "waveover" stop. Plaintiff admitted to changing his conduct after receiving this warning. Around six months later, in

4

August 2023, a new patrol officer made multiple comments around Plaintiff suggesting he wanted to "get involved in a shooting" and thought the police should be able to "shoot pedophiles." Daugherty reported this to his patrol supervisor Master Sergeant McHugh and he reportedly told Plaintiff that he needed to tell his superiors about the comments. Instead, Daugherty chose to take care of it himself.

After learning of the incident from Master Sergeant McHugh, Chief Russo appointed Master Sergeant Scott Ricks, who did not supervise Plaintiff, to investigate Plaintiff's failure to escalate the matter as Master Sergeant McHugh had instructed him. Ricks recommended that several policy violations be sustained for "duty to intervene and report misconduct," "insubordination," and "duties of supervisors." Plaintiff was subsequently suspended 16 hours for the violations. The new patrol officer who made the comments was terminated.

Also in September 2023, Daugherty received a warning for running his own license plate through the BCI database, a technical policy violation discovered during a database audit. In May 2024, approximately eight months later, Daugherty received a 24-hour suspension for leaving an arrestee's wallet on the hood of an impounded vehicle, where it fell off and was lost. Daugherty declined to meet with Chief Russo regarding this discipline.

Subsequently in June 2024, under instruction from Chief Russo, Assistant Chief Brenneman conducted a multi-day investigation into Daugherty's on-duty hours, tracking GPS records, security footage, and internet usage. Brenneman, who was not certified to conduct Internal Affairs investigations, did not interview Daugherty's patrol officers or immediate supervisors. Brenneman concluded Daugherty engaged in a pattern of neglecting duty, failing to properly account for his timecard hours, including claiming unauthorized overtime for a July 4 training that ended on June 28, and being dishonest during the investigation. Chief Russo

accepted Brenneman's recommendation and issued a Notice of Intent to Terminate. Daugherty declined a pre-termination meeting and did not appeal his termination. Daugherty was advised he was terminated on August 6th with the final letter of termination dated August 9, 2024.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] A fact is material if, under the governing substantive law, it could "affect the outcome of the suit."[7] At summary judgment, the court does not "weigh the evidence and determine the truth of the matter" but "determine[s] whether there is a genuine issue for trial."[8] When applying this standard, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party."[9] "However, unsupported conclusory allegations do not create a genuine issue of fact."[10] To defeat a motion for summary judgment, an opposing party's evidence "must be based on more than mere speculation, conjecture, or surmise."[11]

When a party who will bear the burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,] ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an

---

[5] Fed. R. Civ. P. 56(a).

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[7] *Id.* at 248; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.") (citation omitted).

[8] *Id.* at 249.

[9] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008) (citation omitted).

[10] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1037 (10th Cir. 2011) (citation modified).

[11] *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted).

essential element of the nonmoving party's case necessarily renders all other facts immaterial."[12]

Therefore, the movant who will not bear the burden of persuasion at trial may "make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[13]

## ANALYSIS

As set forth in the Complaint, Plaintiff raises three claims under the Age Discrimination Employment Act ("ADEA") for consideration. These are (1) hostile work environment; (2) discrimination; and (3) retaliation. The court considers each claim in turn.

### I.    ADEA Hostile Work Environment

The ADEA prohibits discrimination against a person "because of such individual's age."[14] To prevail on a hostile work environment claim under the ADEA, a plaintiff must show that: (1) he was discriminated against because of his age, and (2) the discrimination was sufficiently severe or pervasive to alter the terms and conditions of his employment.[15]

"Beyond evidence of the defendant's motive, the plaintiff must offer evidence that the defendant's conduct was so severe or pervasive as to alter the terms or conditions of employment. Proof of either severity or pervasiveness can serve as an independent ground to sustain a hostile work environment claim."[16] In determining whether the alleged discrimination was sufficiently severe or pervasive to alter the terms or conditions of employment, the court

---

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[13] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[14] 29 U.S.C. § 623(a)(1).

[15] *See Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (noting the requirements for a plaintiff to overcome summary judgment on a claim of hostile work environment under the ADEA; *Ayoade v. Johnson Cnty. Cmty. Coll.*, 670 F. Supp. 3d 1194, 1208 (D. Kan. 2023) (setting forth the factors).

[16] *Throupe*, 988 F.3d at1252.

looks to the "totality of the circumstances, and consider[s] such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[17]

Conduct is assessed both objectively and subjectively. "It is not enough that the plaintiff perceived the conduct to be severe or pervasive. Rather, the plaintiff must 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'"[18] A few isolated incidents of discriminatory conduct fail to reach the level of pervasiveness required to survive summary judgment.[19]

Daugherty identifies a few incidents that he asserts constitute a hostile work environment. First, Plaintiff relies on an ageist remark[20] made by two other officers, one of which was not employed by the City at the time. Second, Daugherty relies on Chief Russo's comment at a department banquet that officers were "aging out" and the department was "picking new people." Finally, Plaintiff points to a memo from Chief Russo to the City Attorney that he was not going to choose Daugherty as the new SWAT commander because he heard that Plaintiff was close to retirement.

---

[17] *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citation modified).

[18] *Throupe*, 988 F.3d at 1252 (quoting *Delsa Brooke Sanderson v. Wyoming Highway Patrol*, 976 F.3d 1164, 1176 (10th Cir. 2020)).

[19] *See id.* In *Throupe* the Tenth Circuit noted that "whether the conduct was severe or pervasive is typically a question for the jury". *Throupe*, 988 F.3d at 1252. However, a grant of summary judgment is appropriate when a plaintiff fails to make the required showing. *See id.*

[20] Each called another officer a "geriatric fuck".

Taken alone or together, these incidents are legally insufficient to establish a hostile work environment. Under Tenth Circuit law, "a few isolated incidents of discriminatory conduct [do] not make the harassment pervasive."[21]

Further, the evidence in the record not only undermines the alleged severity of each of these incidents but also indicates most were not directed at Plaintiff. The offensive "geriatric" comments were not directed at Daugherty, and he was not present when they were made. Moreover, the Department addressed the conduct by issuing a verbal warning to the offending officer. Chief Russo's comments regarding the department "aging out" and the need for a "succession plan" were benign, public remarks regarding future organizational leadership, rather than severe or physically threatening ageist insults directed at Daugherty. Plaintiff offers no evidence demonstrating they were aimed at him or evidence refuting Russo's deposition testimony explaining they were made as part of succession planning. Finally, the email from Russo to the City Attorney that he thought Daugherty was retiring soon is not evidence of pretext for age discrimination.[22] The relevant question for the analysis here is whether Russo honestly believed Plaintiff was retiring soon, and Plaintiff presents no evidence showing that this was not the case.[23]

In sum, Daugherty fails to demonstrate that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.[24] A few isolated incidents of discriminatory conduct do not reach the level of pervasiveness required to survive summary

---

[21] *Throupe*, 988 F.3d at 1252

[22] *See, e.g., Leibforth v. Belvidere Nat. Bank*, 337 F.3d 931, 933 (7th Cir. 2003) (affirming summary judgment where employer's belief that plaintiff's retirement was "imminent" was not evidence of pretext for age discrimination).

[23] *See id.*

[24] *See Throupe*, 988 F.3d at 1252.

judgment.[25] The court therefore GRANTS summary judgment in favor of Defendant on this claim.

## II.    ADEA Age Discrimination

To prevail on an age discrimination claim under the plain language of the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.[26] A plaintiff need not show that age was the sole motivating factor in the employment decision, rather, an "employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as 'age was the factor that made a difference.'"[27]

The Tenth Circuit "has long held that plaintiffs may use the *McDonnell Douglas* three-step analysis to prove age discrimination under the ADEA."[28] In the absence of direct evidence of age discrimination, the court applies the three-step burden-shifting *McDonnell Douglas* analysis. In the first step a plaintiff must establish a prima facie case of age discrimination. If the plaintiff succeeds, the burden of production then shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment action. Once the employer sets forth such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual.[29]

When evaluating potential pretext evidence, the court does not act "as a superpersonnel department that second-guesses the [employer's] business decisions, with the benefit of twenty-

---

[25] *See id.* In *Throupe* the Tenth Circuit noted that "whether the conduct was severe or pervasive is typically a question for the jury". *Throupe*, 988 F.3d at 1252. However, a grant of summary judgment is appropriate when a plaintiff fails to make the required showing. *See id.*

[26] The Supreme Court's holding in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343 (2009), "clarified that the ADEA requires 'but-for' causation." *Jones v. Oklahoma City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010).

[27]  *Jones,* 617 F.3d at 1277 (quoting *Wilkerson v. Shinseki*, 606 F.3d 1256, 1266 (10th Cir.2010)).

[28] *Id.*

[29] *See Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir. 2020).

twenty hindsight."[30] Accordingly, the court "do[es] not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment."[31] And the facts are examined "as they appear *to the person making the decision*, not as they appear to the plaintiff."[32]

Daugherty claims he was subjected to several adverse employment actions that were discriminatory based on his age. These include (a) his non-promotion to Master Sergeant; (b) Plaintiff's alleged "reassignment" to a "less desirable" shift; (c) the City's refusal to pay for trainings; (d) alleged removal of Plaintiff's supervisory duties; (e) discipline issued to Plaintiff; and (f) termination of Plaintiff's employment.

### A. The SWAT Master Sergeant Promotion

Out of all of Plaintiff's alleged adverse employment actions that support an ADEA age discrimination claim, the court finds this one to be persuasive. On the day after making the decision not to promote Daugherty to Master Sergeant, Russo placed in writing the reasons Daugherty was not selected for the job were his forthcoming retirement ("400 days from retirement") and the fact he was recently assigned a disability rating from the military as a result of combat injuries. Plaintiff suggests Russo's email to the City is direct evidence of discrimination negating a need to engage in the *McDonnell Douglas* three-step analysis. The court disagrees. Under the ADEA, a supervisor's legitimate concerns, comments, and decision-

---

[30] *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1059 (10th Cir. 2020) (quoting *Tyler v. RE/MAX Mountain States, Inc*., 232 F.3d 808, 813–14 (10th Cir. 2000)).

[31] *Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1119 (10th Cir. 2007).

[32] *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 655 (10th Cir. 2013) (citation modified) (emphasis in original).

making related to an employee's plans for retirement are "legally insufficient to show age bias" unless accompanied by age-based comments or stereotypes.[33]

However, moving past the failed direct evidence and utilizing the *McDonnell Douglas* framework, Daugherty has established a prima facie case: he was 53, qualified for the promotion, was passed over, and the City promoted Chris McHugh, who was 43. The burden then shifts to the City to articulate a legitimate, non-discriminatory reason. The City asserts that Chief Russo promoted McHugh because Russo believed Daugherty intended to retire within 400 days and Daugherty's disability rating from the military resulting from combat injuries. In contrast, McHugh had committed to remaining with the unit and was a better "fit." Fit as articulated by Defendant includes avoiding the drama and implied threats of several members of SWAT leaving the team.

Later, Russo informs the Utah Antidiscrimination and Labor Division (UALD) that he is unaware of Daugherty's disability. This is what gives the court pause –inconsistencies in Russo's explanation to UALD and the City Manager. The Tenth Circuit has noted that a plaintiff produces sufficient evidence of pretext when he shows "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"[34] Daugherty has met this burden based on the inconsistencies in the record as to this issue. The shifting, contradictory explanations create a genuine dispute of a material fact as to the true

---

[33] *Schulte v. Potter*, 2005 WL 2789218, at *12 (N.D. Okla. Oct. 19, 2005) (citing cases); *see also, e.g., Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1197 (10th Cir. 2010) (describing plaintiff's allegation about a retirement conversation as "a slender reed indeed on which to send a case to trial for discrimination").

[34] *Jones*, 617 F.3d at 1280 (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir.2005)).

motivation behind the promotion decision and whether age was part of that process. Summary judgment is therefore DENIED as to the SWAT Master Seargent position choice.

### B. Reassignment to Less Desirable Shifts, Payment for Trainings, and Supervisory Duties

The court finds the claims for age discrimination based on less desirable shifts, payment for training, and alleged changes in supervisory duties fail at the prima facie stage. First as to shift bidding, the record shows that Daugherty's schedule change was part of a neutral, department-wide "re-bid" process due to staffing shortages. Daugherty maintained his exact seniority and was given the best available shift under standard bidding policies. "Generally, without more, scheduling disputes rarely qualify as adverse employment action" for purposes of a discrimination claim.[35]

Second, the refusal to pay for non-mandatory leadership courses was neutrally applied based on departmental budget constraints. There is nothing offered by Plaintiff indicating how younger employees were treated better in this regard. Further, Daugherty was never denied mandatory training and was paid for hours logged for the unrequired training he did attend.

Finally, Daugherty admits he was not stripped of scheduling or staffing duties. His general allegations of being given the "cold shoulder" or left off certain management emails do not rise to the level of a material "adverse employment action" under Tenth Circuit law.[36]

Accordingly, summary judgment is GRANTED in favor of Defendant as to these alleged adverse actions.

---

[35] *Aluru v. Anesthesia Consult.*, 176 F. Supp. 3d 1116, 1126 (D. Colo. 2016). *See also*, *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir.2011) (concluding that directing a truck driver to deliver loads which required him to cross a city during rush-hour traffic was "a mere inconvenience," and not an actionable adverse action).

[36] *See, e.g., Johnson v. Weld Cnty.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (citing cases and affirming that supervisors giving employee the "cold shoulder" and trying to avoid and to distance themselves from plaintiff not sufficient to support retaliation or discrimination claim).

### C. Post-Promotion Discipline and Termination

The court finds Defendant is entitled to summary judgment on Daugherty's claims regarding his written warnings, suspensions, and ultimate termination.

First, the written warnings (for the February 2023 camera violation and September 2023 BCI search) did not affect Daugherty's pay, benefits, or employment status, and therefore do not constitute "adverse employment actions" as a matter of law.[37]

Second, regarding Daugherty's suspensions (the 16-hour suspension for improper supervision and 24-hour suspension for property mishandling), Daugherty admits to the underlying factual conduct. He failed to report a subordinate's threatening remarks as instructed, and he left an arrestee's wallet on the hood of a vehicle. His subjective disagreement with the severity of the discipline or the manner of the investigation does not demonstrate pretext.

Further, Daugherty fails to show that his August 2024 termination was discriminatory or pretextual. The termination was supported by a multi-day investigation by Assistant Chief Brenneman documenting information that supported charges of misrepresentation, fraud, and dishonesty during the investigation. Daugherty's arguments focus on perceived "procedural shortfalls" in Brenneman's investigation (such as Brenneman not being internally audit certified and not interviewing patrol officers). Under the "honest belief" rule, the Tenth Circuit does not sit as a "super-personnel department that second-guesses" the wisdom or quality of an employer's investigation.[38] The central question is whether the decision-maker honestly believed the reasons and acted in good faith upon them. Given the evidence gathered by Brenneman, the City has demonstrated an honest belief that Daugherty had falsified his timecards and neglected

---

[37] *Lucas v. Office of Colo. State Pub. Defender*, 705 F. App'x 700, 705 (10th Cir. 2017).

[38] *Frappied*, 966 F.3d at 1059.

his duties. Daugherty's failure to utilize the pre-termination hearing or appeal process further undermines his pretext arguments.

Summary judgment is GRANTED for the Defendant on Daugherty's discriminatory termination claim.

### III.    ADEA Retaliation

To create a *prima* facie case of retaliation under the ADEA a plaintiff must show that "(1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."[39] As noted by Plaintiff, the first protected activity alleging a violation of the ADEA occurred on March 10, 2023. Therefore, any adverse action occurring before that date cannot serve as the basis for an ADEA retaliation claim.[40]

Daugherty points to the following timeline in support of his ADEA retaliation claim.

- July 24, 2023 – Cottonwood denied request to attend internal affairs training.

- August 23, 2023 – Plaintiff filed Complaint in Federal Court

- August 25, 2023 – Plaintiff served notice via email of an Internal Affairs investigation (which was dated August 23)

- September 11, 2023 – First ever "random" audit run on only Daugherty finding use of BCI to run his own plates.

- September 12, 2023 – Daugherty received a disciplinary warning letter

---

[39] *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1202, (10th Cir. 2008).

[40] For example, Plaintiff's August 8, 2022, internal grievance about his inability to apply for the Master Sergeant position was not a protected activity because it merely complained of promotion procedures and did not mention age, age discrimination, or the ADEA

- September 18, 2023 – Daugherty notified of 16-hour suspension without pay

- September 25, 2023 – appeal of suspension denied

- October 10, 2023 – Lieutenant position is amended to prohibit anyone with "minor discipline" from applying. This only affects one person – Mr. Daugherty, who just received the minimum suspension needed to disqualify him from applying.

- Dec 2023 – Jan 2024 – Daugherty interrogated about destruction of ATF equipment.

- April 30, 2024 – Investigation for mishandling property (16rrestee's wallet)

- May 17, 2024 – Daugherty received notice of discipline for property handling (24-hour suspension).

- June 15, 2024 – Reported ongoing unlawful harassment during annual performance review

- Late June of 2024 – Russo orders another investigation into Daugherty.

- July 22, 2024 – Brenneman presents report of investigation recommending termination.

- July 30, 2024 – Notice of Intent to terminate letter sent by Cottonwood.

- August 9, 2024 – Notice of Final Discipline (Termination) sent by Cottonwood.

In response, Defendant argues that Plaintiff's retaliation claim fails for the same reasons his ADEA discrimination claim fails. Plaintiff either cannot support his retaliation allegations factually, cannot demonstrate that the actions were adverse, or cannot overcome the City's legitimate, non-retaliatory reasons by presenting evidence of pretext. Additionally, many of the alleged adverse employment actions have no causal connection to Plaintiff's activity as a matter of law given the passage of time.

16

The court agrees with Defendant's arguments. The May 2024 suspension and August 2024 termination are too remote from Plaintiff's protected conduct to establish a prima facie causal connection or pretext. "[U]nless the termination is very close in time indeed to the protected activity, [the Tenth Circuit has] held that a plaintiff cannot rely on temporal proximity alone and must come forward with additional evidence to establish causation."[41] The Tenth Circuit has held that "a three-month period, standing alone, will not suffice."[42] Plaintiff presents no other evidence of causation or pretext for those actions, other than his bare assertion that the City "just wanted [him] out of there."

Daugherty attempts to bypass this gap by arguing that his checking "yes" to "harassment" on a June 15, 2024, annual questionnaire was a new protected activity that occurred mere days before Brenneman launched his investigation. However, Daugherty admitted in his deposition that this checkmark was merely referring back to the allegations already active in his 2023 federal lawsuit. Referencing prior, long-pending complaints does not constitute a new, independent protected activity for the purpose of resetting the temporal proximity clock.

Plaintiff's ADEA retaliation claim related to his termination fails because the termination was legitimate, non-retaliatory, and Plaintiff presents no evidence of pretext beyond his mere disagreement with the investigation process and its results. Beyond that, Plaintiff rests his retaliation claim related to his termination on evidence of his clean disciplinary record prior to his protected conduct, and the shift that occurred after he engaged in protected conduct. However, the mere existence of adverse employment actions following chronologically after a protected activity is not evidence of pretext, let alone unlawful retaliation. Plaintiff must present

---

[41] *Hinds*, 523 F.3d at 1204 (citation omitted).

[42] *Id.* (citation omitted).

evidence, rather than mere speculation, undermining the City's honest belief in reasons justifying Plaintiff's termination.[43] Speculation of retaliatory animus and reference to his prior clean disciplinary record does not satisfy that burden. Plaintiff thus fails to overcome summary judgment in the City's favor on his retaliation claim based on his termination.

In similar fashion Plaintiff's arguments regarding being forced to take paid administrative leave supposedly in retaliation for protected conduct also fail. As a matter of law, paid administrative leave does not constitute an adverse employment action for purposes of a discrimination or retaliation claim.[44] Further, requiring Plaintiff to undergo a fitness-for-duty exam was likely required under the POST requirements for employment.[45] Daugherty's claims on this front fail.

Finally, the court has considered Plaintiff's other arguments that allegedly support a retaliation claim. The court finds they fail for many of the same reasons already outlined in addressing Plaintiff's ADEA discrimination claims. In summary, the court grants summary judgment as to Plaintiff's ADEA retaliation claim. A retaliation claim cannot be strung together by speculation and conjecture.

---

[43] *See Bones*, 366 F.3d at 875 ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."); *United States v. Bowen*, 527 F.3d 1065, 1076 (10th Cir. 2008) (inferences in a nonmovant's favor are unreasonable if they require "a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility") (citation modified).

[44] *See, e.g., Brown v. Austin*, 13 F.4th 1079, 1092 (10th Cir. 2021) (rejecting argument that placing the plaintiff on paid administrative leave constitutes a materially adverse action); *Couch v. Mikesell*, 2024 WL 4624843, at *4 (D. Colo. Oct. 30, 2024) ("[C]ourts have generally rejected the argument that a fitness-for-duty examination, by itself, constitutes materially adverse employment action."); *Garcia v. Dep't of Health & Soc. Servs.*, 2020 WL 5629784, at *11 to *12 (D. Wyo. Aug. 25, 2020) (holding that "requiring [plaintiff to] undergo a fitness-for-duty evaluation also does not constitute an adverse employment action" where plaintiff was put on paid administrative leave for nearly four months); *Paystrup v. Benson*, 2015 WL 506682, at *9 (D. Utah Feb. 6, 2015) ("The Tenth Circuit has made it clear that subjecting an employee to a psychological examination can be vital for understanding an employer's ADA obligations to that employee.").

[45] *See* Utah Code § 53-6-203(1)(f) (requiring that peace officers are "free of any physical, emotional, or mental condition that might adversely affect the performance of the applicant's duties as a peace officer").

## CONCLUSION AND ORDER

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED in PART and DENIED in PART.

1.  Summary judgment is DENIED as to Plaintiff's Second Claim for Relief under the ADEA solely on the narrow, fact-bound issue of whether Daugherty's non-promotion to SWAT Commander / Master Sergeant in July 2022 was discriminatory based on his age.

2.  Summary judgment is GRANTED in favor of Defendant on all remaining claims under the ADEA and those claims are dismissed with prejudice.

IT IS SO ORDERED.

DATED this 29 July 2026.

Dustin B. Pead
United States Magistrate Judge